corIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAUL CASTANEDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16 C 10167 |
| | ) | Judge Virginia M. Kendall |
| BOARD OF EDUCATION | ) | |
| OF THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## INSTRUCTIONS TO THE JURY

Date: September 5, 2019

Members of the jury, you have seen and heard all the evidence, and you are about to hear the arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them. You must also continue to follow the instructions that I gave you at the start of the trial that you may not communicate about the case or about people involved in the case with anyone other than your fellow jurors until after you have returned your verdict.

Perform these duties fairly and impartially. Each party to the case is entitled to the same fair consideration. Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should not be influenced by any person's race, color, religion, national ancestry, age, or sex.

Nothing I am saying now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

To the extent that these instructions differ from the instructions that I read you at the beginning of the case, the instructions that I am giving you now are the ones that govern your consideration of this case.

1

The evidence consists of the testimony and the exhibits.

Certain testimony was presented by reading depositions. You should give this testimony the same consideration that you would give it if the witness had testified here in court.

In determining whether any fact has been proved, you should consider all of the evidence bearing on that fact, regardless of who offered the evidence.

You must make your decision based on what you recall of the evidence. You will not have a written transcript of the testimony to consult.

Certain things are not evidence.  I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.  This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence, and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper.  You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence.  If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we sometimes look at one fact and conclude from it that another fact exists. In law we call this an "inference."  A jury is allowed to make reasonable inferences, so long as they are based on the evidence in the case.

You may have heard the phrases "direct evidence" and "circumstantial evidence."  Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact.  Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

You are to consider both direct and circumstantial evidence.  The law allows you to give equal weight to both types of evidence, but it is up to you to decide how much weight to give to any evidence in the case.

5

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all.  You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- the reasonableness of the witness's testimony in light of all the evidence in the case; and

- any inconsistent statements or conduct by the witness.

It is proper for an attorney to meet with any witness in preparation for trial.

6

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial.  Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

You may find the testimony of one witness or a few witnesses to be more persuasive than the testimony of a larger number of witnesses.  You need not accept the testimony of the larger number of witnesses.

**The parties and the claims**

The plaintiff in this case is Saul Castaneda.  The defendant in this case is the Board of Education of the City of Chicago.

Mr. Castaneda is a teacher who worked for the Board.  Mr. Castaneda contends that the Board violated a federal law called the Family and Medical Leave Act, or "FMLA," by interfering with his right to take FMLA leave by denying him leave and terminating him.  Mr. Castaneda also contends that the Board violated another federal law, the Americans with Disabilities Act, or "ADA," by failing to reasonably accommodate him by allowing him leave to treat his mental disability.

The Board denies Mr. Castaneda's claims.  The Board contends that it did not violate the FMLA and the ADA in any way.  The Board contends that it terminated Mr. Castaneda's employment because of his misconduct and poor performance as a teacher.

You must give separate consideration to each of Mr. Castaneda's claims.

**All litigants equal before the law**

In this case, the Board is a public body. All parties are equal before the law. A public body is entitled to the same fair consideration that you would give any individual person.

**Preponderance of the evidence**

In the following instructions, I will use the term "preponderance of the evidence." When I say that a party has to prove a proposition by a preponderance of the evidence, I mean that the party must prove that the proposition is more probably true than not true.

### Mr. Castaneda's FMLA claims - general

Mr. Castaneda claims that the Board violated a federal law called the Family and Medical Leave Act, which is often referred to by its initials, "FMLA." This law entitles an eligible employee to take up to 12 weeks of unpaid leave during any 12-month period because of the employee's serious health condition that makes him unable to perform the functions of his position. The FMLA also gives the employee the right following FMLA leave to return to the position he held when the leave began or to an equivalent position. An employee does not have the right to return to his position if he would have been terminated regardless of his request for FMLA leave.

Mr. Castaneda contends that the Board interfered with his rights under the FMLA by (1) denying his request for leave and (2) terminating him. The Board denies both of these claims.

### Mr. Castaneda's FMLA interference claim

To succeed on his FMLA interference claim, Mr. Castaneda must prove each of the following propositions by a preponderance of the evidence:

1. Mr. Castaneda was eligible for FMLA leave. To be eligible for FMLA leave, an employee must have worked for the employer from whom he requests leave for at least 12 months and must have worked 1250 hours for that employer during the 12-month period preceding the leave.

2. Mr. Castaneda had a mental health condition.

3. Mr. Castaneda's mental health condition was a serious health condition. I will define "serious health condition" for you in a moment.

4. The Board had appropriate notice of Mr. Castaneda's need for leave. I will define "appropriate notice" for you in a moment.

5. The Board interfered with Mr. Castaneda's right to take FMLA leave by denying him FMLA leave and/or by terminating him.

The term "serious health condition" means a mental condition that involves continuing treatment by a health care provider. To establish continuing treatment by a health provider, Mr. Castaneda must prove that he was unable to work due to the condition, and was treated two or more times by a health provider.

Mr. Castaneda must have given the Board at least 30 days notice before FMLA leave was to begin. If that was not possible, Mr. Castaneda must have given notice as soon as both possible and practical, taking into account all of the facts and circumstances. Mr. Castaneda must have given at least verbal notice sufficient to make the Board aware that he needed FMLA leave. Mr. Castaneda did not need to mention the FMLA or use any specific words if he gave the Board

12

enough information that the Board knew, or should have known, that Mr. Castaneda needed FMLA leave.

Mr. Castaneda did not need to request FMLA leave if the Board knew or should have known from the circumstances that Mr. Castaneda needed FMLA leave or was so incapacitated that he could not provide notice of his need for leave.

13

### Mr. Castaneda's ADA claims – general

Mr. Castaneda also claims that the Board violated a federal law called the Americans with Disabilities Act, which is often referred to by its initials, "ADA." Under the ADA, it is illegal for an employer to discriminate against a person with a disability if the person is qualified to perform the essential functions of his job and the employer is aware of the employee's limitations.

In this case, Mr. Castaneda claims that the Board discriminated against him by not reasonably accommodating his disability and terminating him. The Board denies this claim.

As you listen to these instructions, please keep in mind that many of the terms I will use have a special meaning under the law. So please remember to consider the specific definitions I give you, rather than using your own opinion as to what these terms mean.

**Mr. Castaneda's ADA accommodation claim**

To succeed on his ADA accommodation claim, Mr. Castaneda must prove each of the following propositions by a preponderance of the evidence:

1.     Mr. Castaneda had a disability or the Board regarded him as having a disability.

2.     Mr. Castaneda was qualified to perform his job.

3.     Mr. Castaneda requested an accommodation and/or Mr. Castaneda's disability made it difficult for him to communicate his need for an accommodation.

4.     The Board was aware of Mr. Castaneda's disability at the time of his request; however, if the disability made it difficult for Mr. Castaneda to communicate his needs, the Board was required to make a reasonable effort to understand those needs and begin communicating with him if the Board knew he might be mentally disabled.

5.     The Board failed to provide Mr. Castaneda with a reasonable accommodation and terminated him.

I will define several of these terms in a few moments.

15

**ADA accommodation claim – "interactive process"**

Once an employer becomes aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee whether there is a reasonable accommodation that will permit him to perform the job. When an employer knows that an employee might be mentally disabled, the employer should start communicating with the employee. Both the employer and the employee must cooperate in this interactive process in good faith.

Neither party can prevail on Mr. Castaneda's failure to accommodate claim simply because the other party did not cooperate in this process. However, you may consider whether a party cooperated in this process in deciding whether a reasonable accommodation existed.

16

## ADA claims – definitions of certain terms

For purposes of Mr. Castaneda's ADA claims:

- The term "disability" means a mental impairment that substantially limits Mr. Castaneda's ability to work. The term "mental impairment" means any condition that prevents the mind from functioning normally.

- Let me start by telling you what I mean by "substantially limiting." An impairment substantially limits a person's ability to work if it significantly restricts him from performing a class of jobs, or a broad range of jobs in various classes, compared to someone with similar knowledge, skills, and training. Being unable to do a particular job, however, is not by itself a substantial limitation on the ability to work

- A person is "regarded as" having a disability if the employer believes the employee has an impairment that substantially limits his ability to work.

- Under the ADA, Mr. Castaneda was "qualified" if he had the skill, experience, education, and other requirements for the job and could do the job's essential functions, either with or without a leave of absence. You should only consider Mr. Castaneda's abilities at the time when he was terminated. Not all job functions are "essential." Essential functions are a job's fundamental duties. In deciding whether a function is essential, you may consider the reasons the job exists, the number of employees the Board has to do that kind of work, the degree of specialization the job requires, the Board's judgment about what is required, the consequences of not requiring an employee to satisfy that function, and the work experience of others who held the position. In addition to specific job requirements, an employer may have general requirements for all employees. For example, the employer may require a regular level of attendance.

17

- An "accommodation" for a disability is a change that will allow a person with a disability to perform a job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits that it will produce. A reasonable accommodation may include such things as a reasonable leave of absence, a change in work rules, location, equipment, schedules, or assigning non-essential functions of the job to another employee. An employer is not required, however, to excuse the employee from performing the essential functions of the job, or to give one or more of them to another employee. Nor does the employer have to accept lower productivity than is expected of other employees doing the same job.

- A brief period of leave to deal with a medical condition may be a reasonable accommodation in some circumstances. However, a medical leave spanning multiple months does not permit the employee to perform the essential functions of his job and he would be deemed unqualified.

**Damages**

If you find in favor of Mr. Castaneda on his claim under the FMLA, then I will decide the question of the amount of damages to award on the FMLA claim. You will not consider the question of damages on the FMLA claim.

If you find in favor of Mr. Castaneda on his claim under the ADA, then you will go on to consider the question of damages on that claim. Mr. Castaneda must prove his damages by a preponderance of the evidence.

If you find in favor of the Board on all of Mr. Castaneda's claims, then you will not consider the question of damages.

Mr. Castaneda is requesting compensatory damages on his ADA claims.

19

**ADA claim – compensatory damages**

You may award compensatory damages only for injuries that Mr. Castaneda has proved by a preponderance of the evidence were caused by the Board's wrongful conduct.

Any award of compensatory damages that you make must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages require the actual loss of money; they include the mental and emotional aspects of injury, even if they are not easy to measure.

No evidence of the dollar value of mental or emotional pain and suffering and loss of enjoyment of life has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of these factors. You are to determine an amount that will fairly compensate Mr. Castaneda for any injury he has sustained.

In calculating compensatory damages, you should not consider the issue of lost wages and benefits. If you find in favor of Mr. Castaneda on one or more of his claims under the FMLA or the ADA, I will calculate and determine any damages for past or future lost wages and benefits by reason of a violation of the FMLA or the ADA.

**Limited Admissibility**

Throughout this trial you heard evidence about Board policies and rules. A violation of the Board's policy or rules cannot by itself be deemed a violation of the FMLA or the ADA.

**Final instructions**

Once you are all in the jury room, the first thing you should do is choose a presiding juror. The presiding juror should see to it that your discussions are carried on in an organized way and that everyone has a fair chance to be heard. You may discuss the case only when all jurors are present.

Once you start deliberating, do not communicate about the case or your deliberations with anyone except other members of your jury. You may not communicate with others about the case or your deliberations by any means. This includes oral or written communication, as well as any electronic method of communication, such as by using a telephone, cell phone, smart phone, iPhone, Android, Blackberry, or any type of computer; by using text messaging, instant messaging, the Internet, chat rooms, blogs, websites, or social media, including services like Facebook, LinkedIn, GooglePlus, YouTube, Twitter, Instagram, or SnapChat; or by using any other method of communication.

If you need to communicate with me while you are deliberating, send a note through the court security officer. The note should be signed by the presiding juror or by one or more members of the jury. To have a complete record of this trial, it is important that you not communicate with me except by a written note. I may have to talk to the lawyers about your message, so it may take me some time to get back to you. You may continue your deliberations while you wait for my answer.

If you send me a message, do not include the breakdown of your votes. In other words, do not tell me that you are split 6-6, or 8-4, or whatever your vote happens to be.

A verdict form has been prepared for you. You will take this form with you to the jury room.

[Read the verdict form.]

When you have reached unanimous agreement, your presiding juror will fill in and date the verdict form, and each of you will sign it.

Advise the court security officer once you have reached a verdict. When you come back to the courtroom, I will read the verdict aloud.

The verdict must represent the considered judgment of each juror. Your verdict must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with each other, express your own views, and listen to your fellow jurors' opinions. Discuss your differences with an open mind. Do not hesitate to re-examine your own view and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence just because of the opinions of your fellow jurors or just so that there can be a unanimous verdict.

The twelve of you should give fair and equal consideration to all the evidence. You should deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror.

You are impartial judges of the facts.